DORIS J. HALL *v.* STATE OF INDIANA

[No. 3-1076A227. Filed September.28, 1977. Rehearing denied November 14, 1977. Transfer denied February 14, 1978.]

*Thomas W. Munger*, of Lafayette, for appellant.

*Theodore L. Sendak*, Attorney General, *David L. Steiner*, Deputy Attorney General, for appellee.

STATON, P.J.—Doris June Hall was tried by jury and was convicted of (1) driving while under the influence of intoxicating liquor and (2) driving with reckless disregard for the safety, property, and rights of others. She contends on appeal; that her convictions were not supported by sufficient evidence; that there

was fundamental error in the trial proceedings; and that she was denied a fair trial because of ineffective assistance of counsel. We affirm.

## I.

## Evidence

On appeal we will not weigh evidence or determine the credibility of witnesses. *Turner v. State* (1972), 258 Ind. 267, 280 N.E.2d 621. We may consider only that evidence and the reasonable inferences to be drawn therefrom which support the verdict. *Liston v. State* (1969), 252 Ind. 502, 250 N.E.2d 739; *Foster v. State* (1974), 262 Ind. 567, 320 N.E.2d 745; *Pfeifer v. State* (1972), 152 Ind. App. 315, 283 N.E.2d 567.

The evidence most favorable to the State was that four children were walking two dogs along a blacktop country road on the afternoon of December 22, 1975. One child stated that she did not hear Hall's car coming, but she saw it "coming fast." Another child testified that she saw the car before it started up the hill, and it was going as fast as it could go--about 110 or so. After the children saw the car, they tried to get behind a tree. Two of the children testified that they saw the wheels of the car turn toward them. These two children were seriously injured by Hall's car. After Hall's car struck the two children, she stopped the car and returned to see if the children were hurt. She did not act hysterical or excited.

Tommie Hammer, the mother of the two injured children, testified that Hall had been at the Hammer home the night before the accident and had been drinking vodka. Hammer stated that it was her opinion that Hall was intoxicated twenty minutes after the accident when Hall came up to her house. Two other persons also saw Hall at Tommie Hammer's home after the accident and thought that Hall was under the influence of liquor.

The accident occurred between 2:30 and 3:00 P.M. After the children were taken to the hospital, Hall left Hammer's residence and went to her own home. The sheriff's department requested that the town marshal pick her up there at about 5:30 P.M. Hall

admitted that after the accident and after leaving the Hammer home she drank half of a half-pint bottle of vodka, and that she finished it while the town marshal was standing in the front room. She was given a breathalyzer test at 6:00 or 6:30 P.M.; her rights were not read to her before she finally submitted to the test. The test produced a reading of .235 percent of blood alcohol. The results of the breathalyzer test were admitted into evidence; Hall did not object. Later, the State tendered an instruction concerning the percentage of alcohol in the blood; the trial court modified the instruction slightly, and it was given:

> "I instruct you that if you are convinced beyond a reasonable doubt that at the time and place charged in the information herein the defendant operated a motor vehicle upon a public highway of this State and that at the time of such operation there was 10/100ths percent or more by weight of alcohol in her blood, the fact, if it be a fact, that there was 10/100ths percent by weight of alcohol in her blood may be considered by you as evidence that the defendant was under the influence of intoxicating liquor sufficient to lessen her driving ability within the meaning of a statutory definition of this offense."

## II.

### Convictions

#### A. Driving While Under the Influence

Hall contends that the trial court committed error when it admitted the results of the breathalyzer test into evidence. Further error was committed by the trial court when it later gave an instruction on blood alcohol content. She contends that no connection had ever been made by the State between her state of intoxication when the test was conducted and her state of intoxication when she was driving the car. However, when the test results were offered in evidence by the State, Hall did not make any objection to the admissibility of the test. Where no objection has been made to the evidence admitted or to the instruction given, any error which may have been committed by the trial court is waived on appeal. *Hartwell v. State* (1974), 162 Ind. App. 445, 321 N.E.2d 228; *Coakley v. State* (1972), 152 Ind. App. 280, 283 N.E.2d 392.

A non-expert witness may give testimony as to whether a defendant was intoxicated. *New v. State* (1970), 254 Ind. 307, 259 N.E.2d 696. Hall's conviction for driving while under the influence is supported by the testimony of Tommie Hammer and others who saw Hall immediately following the accident and who believed that she was intoxicated. According to Hall's own statements, she had nothing to drink between the accident and the time she reached her own home. Therefore, we must not reweigh the evidence and redetermine the credibility of witnesses whose testimony supports Hall's conviction. *Klebs v. State* (1974), 159 Ind. App. 180, 305 N.E.2d 781. Moreover, there was evidence that the car smelled of alcohol, that Hall was driving very fast, and that the car was out of control. These facts would support a finding by the jury that Hall was driving while under the influence of liquor. *Matthew v. State* (1972), 154 Ind. App. 182, 289 N.E.2d 336.

### B. Reckless Driving

Hall argues that a reckless driving instruction did not conform to the indictment. This alleged error is waived because Hall failed to object to the giving of the instruction. *Loza v. State* (1975), 263 Ind. 124, 325 N.E.2d 173. We have examined the instruction and the indictment, and we conclude that the instruction was a correct statement of applicable law. *Frith v. State* (1975), 263 Ind. 100, 325 N.E.2d 186.

Additionally, the instruction was not harmful. Even though the indictment mentioned only "driving recklessly against another," Hall cannot complain of the portions of the instruction relating to speed and driver behavior which is heedless of safety to others. She was driving as fast as the car would go, "about 110," and she turned her wheels toward the children. A trial judge has a duty to instruct a jury on all matters necessary for a final determination. *Thomas v. State* (1975), 164 Ind. App. 647, 330 N.E.2d 325.

Hall's conviction for reckless driving was supported by sufficient evidence. Considering the evidence most favorable to the State, we perceive that Hall was driving at a very fast rate of speed on a country road, that she turned her

wheels toward the children, that she lost control of the car, and that she had been drinking. This combination of factors is adequate to support a reckless driving conviction. *Kidwell v. State* (1969), 252 Ind. 585, 251 N.E.2d 119. The giving of the instruction on reckless driving was harmless. *Pinkerton v. State* (1972), 258 Ind. 610, 283 N.E.2d 376.

## III.

### Fundamental Error

Hall cites in her brief several excerpts of questions by the prosecutor which she maintains were purposeful attempts to poison the minds of the jury and which operated to convict her by means of innuendo. As discussed above, sufficient evidence was presented to support both convictions; therefore, we cannot agree that any alleged misconduct of the prosecutor *ipso facto* resulted in the denial of a fair trial.

We have examined the portions of the transcript of which Hall complains. Hall would argue that the "country jury" which tried her was very likely influenced by the insinuations of her guilt made by the State. Yet, no objection was made at trial to the questions; no request for admonishment was made. Such failure to timely provide the trial court with an immediate avenue of correction waives the issue. *Bradburn v. State* (1971), 256 Ind. 453, 269 N.E.2d 539; *Burgett v. State* (1974), 161 Ind. App. 157, 314 N.E.2d 799.

Most of the prosecutor's questions related to Hall's drinking. We cannot denounce the prosecutor's approach in light of other evidence which was presented and is not objected to here on appeal. There were derogatory connotations in many of the State's questions, but those same questions were relevant to crucial issues and were vital in terms of attempted impeachment. The cumulative effect of the State's questions does not rise to the level of fundamental error. *See Hadley v. State* (1975), 165 Ind. App. 216, 332 N.E.2d 269.

## IV.

### Ineffective Counsel

Hall's final argument on appeal is that she was ineffectively represented by counsel. She attempts to support this contention by directing us to all of the issues which were waived due to her counsel's failure to object at trial.

The Indiana Supreme Court has analyzed and discussed the problem of an alleged incompetent counsel:

"We recognize that the 'waiver of error' rule is a harsh one and that post conviction claims of incompetency of counsel have mushroomed as efforts to open the door to reviews of claimed error which, on many occasions, ought to have been previously presented. We also recognize that our seine for netting the bona fide incompetence claims is course [*sic*] and gives a petitioner seeking a new trial upon such grounds a burden even heavier than that carried in most post conviction proceedings. . . .

Assuming that the petitioner . . . carries his burden of proof as to the facts alleged, the effect must, nevertheless, be judged in context on a case to case basis; and the burden is upon the petitioner not only as to the facts but also to persuade the trial court that his trial counsel's representation was ineffective and that the 'totality of the circumstances' reflect incompetence and a mockery of justice. . . ." *Jackson v. State* (1975), 264 Ind. 54, 339 N.E.2d 557, 559-560.

There is a presumption that defense counsel is competent. *State v. Irvin* (1973), 259 Ind. 610, 291 N.E.2d 70. Ample latitude must be given counsel in order that variations in strategy and tactics may be accommodated. *Jennings v. State* (1973), 156 Ind. App. 640, 297 N.E.2d 909. A total failure to object to certain errors in trial proceedings does not necessarily constitute incompetency. *Lowe v. State* (1973), 260 Ind. 610, 298 N.E.2d 421.

In the context of Hall's trial, and taking into account all of the evidence given, we cannot conclude that Hall's counsel was incompetent. Appellate review of a criminal trial, like Monday morning quarterbacking, may reveal options which were *not* taken. But, this does not imply that the trial strategy of a defense

counsel deprived a defendant of a fair trial. The jury heard the State's evidence which it believed; Hall presented other evidence which the jury chose not to believe. The decision of Hall's attorney not to object to certain evidence and certain instructions could well have been part of his trial strategy. There is no indication from the record that Hall's attorney was not prepared for trial or that Hall's attorney was not diligent in her defense. Many witnesses were presented; cross-examination was thorough; Hall was acquitted on one charge. Our review of Hall's trial does not indicate ineffective representation. *Bucci v. State* (1975), 263 Ind. 376, 332 N.E.2d 94.

We affirm.

Hoffman, J., concurs;

Garrard, J., concurs in result.

NOTE—Reported at 367 N.E.2d 1103.