## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 13 2017, 8:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark F. James
Anderson, Agostino & Keller P.C.
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pierre Patrick Williams, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | September 13, 2017 <br><br> Court of Appeals Case No. <br> 71A05-1701-CR-23 <br><br> Appeal from the St. Joseph <br> Superior Court <br><br> The Honorable Elizabeth C. <br> Hurley, Judge <br><br> Trial Court Cause No. <br> 71D08-1504-F6-213 |

**Brown, Judge.**

[1] Pierre Patrick Williams appeals his conviction for operating a vehicle while intoxicated as a level 6 felony. Williams raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

[2] Around 1:15 or 1:30 a.m. on April 15, 2015, New Carlisle Police Officer Ron Whitt was traveling eastbound on State Road 2 when a vehicle came up behind him "pretty fast" with its bright lights on. Transcript at 11. By setting the cruise control of his patrol car to sixty miles per hour and activating its same direction radar, Officer Whitt captured the vehicle's speed as eighty miles per hour, twenty miles above the speed limit. He activated his patrol car's emergency lights and initiated a stop of the vehicle.

[3] Officer Whitt approached the driver, Williams, informed him of the reason for the stop, and asked for his information. As he spoke to Williams, Officer Whitt noticed that "his eyes were red and watery" and smelled the "odor commonly associated with an alcoholic beverage" coming from Williams. *Id.* at 14. Returning to his patrol car to run a license check, Officer Whitt turned off his front emergency lights and activated the patrol car's recording device. Officer Deak arrived at the scene, spoke with Williams, and "could smell a little bit an odor of alcohol." *Id.* at 55. Officer Whitt illuminated a dry and level location and returned to have Williams step out of his vehicle to perform field sobriety testing, only to find him asleep. After Williams exited his vehicle, Officer

Whitt could still smell alcohol coming from him. Williams failed the horizontal gaze nystagmus test ("HGN") test.

[4] After administering the field sobriety tests, Officer Whitt offered a portable breath test to Williams, who took it and asked what he had received. Officer Whitt then recited the Indiana implied consent law, and Williams said he would not take the chemical test. Officer Whitt then placed Williams in handcuffs and transported him to the St. Joseph County jail. At the jail, Officer Whitt again read the Indiana implied consent law to Williams, and again he refused the test. Officer Whitt had him step into the booking area, where he first laid down on the bench and then rolled off onto the floor. While at the jail, he made various statements, including "I'm going to throw up" and "Dang, I got lit." State's Exhibit 2 at 0:58, 4:32.

[5] On April 6, 2015, the State charged Williams with two counts of operating a vehicle while intoxicated, one as a class C misdemeanor and the other as a level 6 felony. On September 1, 2016, the court held a bench trial at which the State presented the testimony of Officer Whitt and Officer Deak. Officer Whitt testified that first he had Williams perform the HGN, and that Williams exhibited all six clues or indicators that officers look for when having people perform the HGN test: each eye exhibited lack of smooth pursuit, nystagmus prior to 45 degrees, and distinct and sustained nystagmus.[1] Officer Whitt also

---

[1] Officer Williams testified that three clues must be shown for a person to have failed the test.

testified that he explained and demonstrated the nine step walk and turn test, or a divided attention test, that Williams stepped "side to side and not heel to toe" and made an improper turn, and that he failed the test. Transcript at 42.

[6] When the prosecutor moved to admit a recording of Officer Whitt administering the field sobriety tests, Williams's counsel requested that the court "stop viewing at 1:24 a.m., which is where the portable breath test begins." *Id.* at 28-29. The court stated "[o]kay" and granted the prosecutor permission to publish "as long as we can stop at that point." *Id.* at 29. The court admitted without objection video from the jail vestibule as State's Exhibit 2 and video from the breath test room as State's Exhibit 3. The video from the jail vestibule reflects Williams's statement, "Dang, I got lit." State's Exhibit 2 at 4:32.

[7] After the State rested, Nichelle Jones testified that during the night of the traffic stop she was in the vehicle with Williams, they were coming from a casino where Williams had one drink, and while there she was not with him the whole time. On cross-examination, Jones testified that Williams was "drinking coffee." Transcript at 62. When questioned further, Jones also testified the one drink she saw Williams have was a "virgin long island iced tea" which contained only "rum," and that she only saw Williams have one drink. *Id.* at 62-63.

[8] On September 26, 2016, the court found Williams guilty of operating a vehicle while intoxicated as a class C misdemeanor and entered an order containing

findings of fact and conclusions of law.[2]  On September 27, 2016, Williams stipulated to a previous conviction within five years of operating a motor vehicle while intoxicated.  On December 13, 2016, the court entered a judgment of conviction for operating a vehicle while intoxicated as a level 6 felony, sentenced him to eighteen months, suspended the sentence to probation, and suspended his driver's license for a period of one year.

## Discussion

[9]   The issue is whether the evidence is sufficient to sustain Williams's conviction for operating a vehicle while intoxicated as a level 6 felony.  Williams argues that the State failed to prove that he was intoxicated.  He contends that the State did not present evidence that he consumed a significant amount of alcohol or that he had impaired attention and reflexes, unsteady balance, or slurred speech, that the court gave improper weight to the field sobriety testing, and that the HGN test was "not conducted in accordance with the NHTSA guidelines."  Appellant's Brief at 8.  He also asserts that the court erroneously considered video evidence that had been stipulated beforehand by the parties to be omitted, namely video evidence "after Williams was administered the portable breath test . . . anything after the time stamp of 1:24."  *Id.* at 6.

---

[2] The court found State's Exhibit 1 to be inconclusive on the issue of whether Williams failed the walk and turn test, and also that Williams "failed, at minimum, the Horizontal Gaze Nystagmus test . . . ." Appellant's Appendix Volume II at 23.

Specifically, he asserts that the court improperly referred to a comment he made after being shown the result of the portable breath test.

[10]  The State contends that sufficient evidence supports Williams's conviction and points to Officer Whitt's testimony that he observed Williams's red, watery eyes, he detected the odor of an alcoholic beverage on Williams, and that Williams failed two field sobriety tests.  In response to Williams's claim of improperly-considered evidence, the State argues Williams fails to provide a description of the challenged evidence and notes that the court's sentencing order refers to Williams's statement "Dang, I got lit" made while in the jail vestibule as shown in State's Exhibit 2.

[11]  In a criminal case the trial court is not required to make either findings of fact or conclusions of law.  *Dozier v. State*, 709 N.E.2d 27, 30 (Ind. Ct. App. 1999) (citing *Nation v. State*, 445 N.E.2d 565, 570 (Ind. 1983)).  Thus, the focus of our inquiry is not upon the remarks the trial court makes in a bench trial after having reached the conclusion that a defendant is guilty.  *Id.*  Rather, we review whether the evidence presented to the trial court as factfinder was sufficient to sustain the conviction.  *Id.*

[12]  When reviewing the sufficiency of the evidence, we will affirm "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt."  *Wright v. State,* 828 N.E.2d 904, 906 (Ind. 2005) (quoting *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004)).  We do not reweigh

the evidence or assess the credibility of the witnesses. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.*

[13] The offense of operating a vehicle while intoxicated is governed by Ind. Code § 9-30-5-2, which provides that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor." Ind. Code § 9-30-5-3(a)(1) provides that

> a person who violates section 1 or 2 of this chapter commits a Level 6 felony if . . . the person has a previous conviction of operating while intoxicated that occurred within the five (5) years immediately preceding the occurrence of the violation of section 1 or 2 of this chapter[.]

"Intoxicated" means under the influence of alcohol, a controlled substance or a combination of them "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. "The State need not present separate proof of impairment of action, impairment of thought, and loss of control of faculties to establish an individual's intoxication." *Woodson v. State*, 966 N.E.2d 135, 142 (Ind. Ct. App. 2012), *trans. denied*. Rather, a person's impairment is to be determined by considering his capability as a whole, not component by component, such that impairment of any of these three abilities equals impairment. *Id*. Such impairment can be established by evidence of: (1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech. *Id.* (citing *Fought v. State*,

898 N.E.2d 447, 451 (Ind. Ct. App. 2008)). Proof of intoxication does not require proof of a blood alcohol content level. *Ballinger v. State*, 717 N.E.2d 939, 943 (Ind. Ct. App. 1999); *Jellison v. State*, 656 N.E.2d 532, 535 (Ind. Ct. App. 1995).

[14] To the extent that Williams argues that the trial court in its findings improperly referred to his statement, "Dang, I got lit," Appellant's Appendix Volume II at 22, we note the record reveals that Williams made that statement in the booking area of the jail as shown in the video admitted as State's Exhibit 2 without objection.[3]

[15] Turning to the evidence most favorable to Williams's conviction, the record reveals that Officer Whitt testified that he determined that Williams's vehicle was traveling eighty miles per hour in a sixty mile per hour speed zone. Officer Whitt observed that Williams had red, watery eyes and detected the odor of an alcoholic beverage on Williams when he first spoke to Williams and again after Williams exited his vehicle. When Officer Whitt returned to have Williams step out of his vehicle to perform field sobriety testing, he found him asleep.

---

[3] The court's findings of fact included the following finding:

> 5. The Court finds that State's Exhibit 2, the DVD of the Defendant getting booked at the St. Joseph County Jail, to be most dispositive. In that DVD, the Defendant is laying down on a bench while answering the jail staff questions. He then says he feels like he's going to throw up and rolls off the bench and lays on the ground instead. Later, after the jail staff has the Defendant blow into the portable breath test and shows him the results, the Defendant says, "Dang, I got lit!"

Appellant's Appendix Volume II at 22.

Williams failed, at minimum, the HGN test.[4]  While at the jail, he initially laid on the bench, and then later stated, "I'm going to throw up," rolled off the bench, and lay down on the floor.  *See* State's Exhibit 2 at 0:58-1:48.

[16]  Based upon the record, we conclude that evidence of probative value exists from which the court as the trier of fact could find that Williams was intoxicated and could have found him guilty beyond a reasonable doubt of operating a vehicle while intoxicated as a level 6 felony.  *See Hall v. State*, 174 Ind. App. 334, 336-337, 367 N.E.2d 1103, 1106-1107 (1977) (holding that the evidence was sufficient to sustain the defendant's conviction for driving while under the influence of liquor where witnesses who saw the defendant immediately following the accident believed that she was intoxicated, the defendant's car smelled of alcohol, and her vehicle was "driving very fast" and "out of control").

## *Conclusion*

[17]  For the foregoing reasons, we affirm Williams's conviction for operating a vehicle while intoxicated as a level 6 felony.

---

[4] To the extent that Williams argues that the HGN test was not conducted in accordance with the NHTSA guidelines because "flashing lights . . . would affect the jerking of Williams [sic] eyeballs," Appellant's Brief at 7-8, we observe that Officer Whitt testified that he turned off the flashing lights on his vehicle.  He also testified that he believed nobody "had front . . . emergency lights on," that Officer Deak had his "red and blues off," and that, "if there was [sic] any flashing lights, the flashing lights would be below knee level because it was [the] front strobe" from Officer Deak's vehicle parked behind Officer Whitt's vehicle. Transcript at 34-35.

[18]    Affirmed.

Najam, J., and Kirsch, J, concur.